UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
                                                        :

U.S. Commodity Futures Trading Commission,

                    Plaintiff,

-against-

Alexsander Efrosman a/k/a Alex Besser, AJR Capital Inc., and Century Maxim Fund Inc.,

                    Defendants.
----------------------------------------------------X

FILED UNDER SEAL

SEALED

05 Civ 8422 (KMW)
Opinion & Order

WOOD, U.S.D.J.:

Certain parties who previously intervened in the above-captioned action (the "Iatarola Intervenors") move to reopen the case in order to (1) amend the Complaint to add new defendants and new allegations; and (2) issue a restraining order to freeze the new defendants' assets.

For the reasons stated below, the Court DENIES the Iatarola Intervenors' motion to reopen the action.

I.      Background

In September 2005, the Commodities Futures Trading Commission ("CFTC") filed the instant action, charging Defendants Alexander Efrosman, AJR Capital Inc., and Century Maxim Fund Inc. (collectively, "Defendants") with perpetrating a fraudulent investment scheme (the "AJR Capital Scheme"), in violation of the Commodity Exchange Act. The Complaint alleged that Defendant Efrosman, acting under the alias Alex Besser, solicited and obtained over $5.2 million from more than 110 investors, by representing that he would invest the funds in foreign currency futures through his companies, AJR Capital Inc. and Century Maxim Fund Inc. In fact,

1

Defendant Efrosman did not engage in any foreign exchange trading, but instead used the money for personal purposes. Efrosman disappeared from the United States in June 2005. His whereabouts are currently unknown.

On March 27, 2007, the Court entered a default judgment against Defendants (the "Judgment"). The Court found that the AJR Capital Scheme violated various sections of the Commodity Exchange Act. The Court ordered Defendants to pay over $4.5 million in restitution to defrauded investors, who were listed in attachments to the Judgment. The Court also ordered anyone served with a copy of the Judgment to turn over any funds, assets, or property in his possession belonging to the Defendants. Any restitution funds were to be paid to the CFTC, for pro rata distribution to the investors listed in the Judgment's attachments. The Judgment stated that all investors identified in the attachments were intended third-party beneficiaries of the Judgment for pursuant to Federal Rule of Civil Procedure 71, and thus could enforce the Judgment in order to obtain restitution, ensure compliance, and hold Defendants in contempt for any violations.

Following the entry of judgment, certain investors listed in the Judgment (the "Migliorino Intervenors"), moved to intervene in the action, claiming that they had superior rights to funds of Defendants that had been frozen prior to issuance of the Judgment. The CFTC opposed the Migliorino Invervenors' motion, arguing that the funds should be turned over to the CFTC and distributed on a pro rata basis to all investors. The Iatarola Intervenors, who were also investors listed in the Judgment, moved to intervene in support of the CFTC. The Court permitted the Migliorino Intervenors and the Iatarola Intervenors to intervene in the action, in order to determine the issue of priority. In August 2009, the Court ruled in favor of the CFTC and

ordered that the funds be distributed to all investors on a pro rata basis. The Court then ordered the case closed.

On November 16, 2009, the Iatarola Intervenors filed the instant motion to reopen the case. In their motion, the Iatarola Intervenors allege that from 2008 to 2009, Defendant Efrosman carried out in Panama a scheme (the "Panama Scheme") similar to the AJR Capital Scheme. According to affidavits submitted by alleged victims of the Panama Scheme (the "Panama Victims"), Defendant Efrosman, acting under the alias Mikhail Grossman, solicited over $3 million from investors, which he promised to invest in foreign currency futures through his company, Advantage Fund Panama, Inc. The Panama Victims believe that Defendant Efrosman used the funds for personal purposes, rather than investing them. The Panama Victims have not seen or heard from Defendant Efrosman since September 2009.

The Iatarola Intervenors allege that several people conspired with Defendant Efrosman to perpetrate the Panama Scheme: Rachel Efrosman (a/k/a Rachel Grossman), Defendant Efrosman's wife; Jeffrey Furmanski, Ms. Efrosman's brother; Anna Furmanski and Leonard Furmanski, Ms. Efrosman's parents; and three unrelated individuals, Efroim Stein, Hannah Stein, and Carlos Pretto (collectively with Advantage Fund Panama, Inc., the "Additional Defendants"). The Panama Victims assert in their affidavits that Rachel Efrosman helped solicit investors in Advantage Fund Panama, Inc., and that the Furmanskis regularly visited the Efrosmans in Panama. Efroim Stein allegedly posed as a rabbi and provided references for Defendant Efrosman.

The Iatarola Intervenors allege that the evidence of the involvement of Rachel Efrosman, the Furmanskis, and the Steins in the Panama Scheme proves that they were also involved in the AJR Capital Scheme. To support their contention, the Iatarola Intervenors point to certain

evidence that the CFTC discovered while investigating the AJR Capital Scheme, including records showing payments made to Ms. Efrosman and the Furmanskis from a bank account connected to the fraud. The Iatarola Intervenors contend that when this information is assessed in light of evidence regarding the Panama Scheme, it is clear that the Furmanskis, Steins, and Ms. Efrosman were involved in the AJR Capital Scheme.

The Iatarola Intervenors also submit documentation of property owned by the Furmanskis, and claim that they have uncovered seven new bank accounts under the control of either Defendant Efrosman or one of the Additional Defendants.

On the basis of the affidavits and other evidence submitted, the Iatarola Intervenors ask that the Court reopen the action in order to: (1) amend the Complaint to add Rachel Efrosman, Jeffrey Furmanski, Anna Furmanski, Efroim Stein, Hanna Stein, Carlos Pretto, and Advantage Fund Panama, Inc. as Defendants and to add allegations regarding the Panama Scheme and the involvement of Ms. Efrosman, the Furmanskis, and the Steins in the AJR Capital Scheme; and (2) issue a restraining order freezing the Additional Defendants' assets and any newly identified assets belonging to Defendant Efrosman.

For the reasons set forth below, the Court DENIES the Iatarola Intervenors' motion.

II.  <u>Analysis</u>

   A. <u>Motion to Enforce Judgment Pursuant to Rule 71</u>

The Iatarola Intervenors argue that the Court should grant their motion pursuant to Rule 71 of the Federal Rules of Civil Procedure, which permits a third-party beneficiary of a court order to enforce that order in the same manner as a party to the case. The Iatarola Intervenors assert that they are third-party beneficiaries of the Judgment, and that they are moving to reopen the case in order to enforce the Judgment.

4

Rule 71 does not provide a ground for granting the Iatarola Intervenors' motion. While the Iataraola Intervenors are third-party beneficiaries of the Judgment, they are not seeking to enforce the Judgment. Rather, they are seeking to bring new claims. This case was brought by the CFTC against Defendants to recover funds defrauded through the AJR Capital Scheme. The Iatarola Intervenors seek to amend the Complaint to assert new, private claims related to the Panama Scheme and some Additional Defendants' alleged involvement in the AJR Capital Scheme. Rule 71 does not permit third-party beneficiaries to assert new claims.

B. <u>Motion to Intervene Pursuant to Rule 24</u>

It is possible to construe the Iatarola Intervenors' motion as a motion to intervene in the actions as plaintiffs, in order to reopen the case and amend the Complaint.[1] The Iatarola Intervenors cannot intervene in the case for such purposes.

Federal Rule of Civil Procedure 24 governs intervention. Under Rule 24(a)(2), a party has a right to intervene in an action where the party: (1) files a timely application to intervene; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention, disposition of the action may impair or impede the party's ability to protect its interest; and (4) is not adequately represented by other parties to the action. <u>Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n</u>, 471 F.3d 377, 389 (2d Cir. 2006).

If a party cannot intervene as of right, a court may still permit intervention pursuant to Rule 24(b). See Fed. R. Civ. P. 24(b) (stating that a court may permit anyone to intervene who, <u>inter alia</u>, has a claim or defense that shares with the main action a common question of law or fact). When determining whether to grant permissive intervention, courts consider factors

---

[1] The Iatarola Intervenors appear to believe that the Court's order dated December 7, 2007, which granted their earlier motion to intervene on the issue of priority, made them plaintiffs to the action. They are mistaken. The Court's December 7 order permitted the Iatarola Intervenors to intervene in the action for the limited purpose of opposing the Migliorino Intervenors' claim of priority. It did not make the Iatarola Intervenors plaintiffs, or give them the right to control the action or amend the Complaint.

5

similar to those considered for intervention as of right, and additional factors such as whether intervention will unduly delay or prejudice adjudication of the case. See Fed. R. Civ. P. 24(b); In re Bank of N.Y. Derivative Litig., 320 F.3d 291, 300 n.5 (2d Cir. 2003); U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191-92 (2d Cir. 1978). A court has broad discretion to decide whether to grant permissive intervention. United States v. Pitney Bowes, Inc., 25 F.3d 66, 73 (2d Cir. 1994) ("Reversal of a district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique.").

Courts are reluctant to allow private parties to intervene in government enforcement actions. See SEC v. Everest Management Corp., 475 F.2d 1236 (2d Cir. 1972); CFTC v. Carter, Rogers & Whitehead, 497 F.Supp. 450 (E.D.N.Y. 1984); see also Sam Fox Publishing Co., 366 U.S. 683, 693 (1961) (denying intervention because private party had not provided a reason "to subvert . . . the unquestionably sound policy of not permitting private antitrust plaintiffs to press their claims . . . in the same suit as the Government"). The Second Circuit has denied intervention as of right where a private party can bring its own, separate action against the defendants, on the ground that disposition of the government action will not impair the private party's interest. See Everest Management Corp., 475 F.2d at 1239. Courts have denied permissive intervention because it places undue costs and burdens on the government, including increasing the complexity of cases and slowing litigation. Id. at 1240; Carter, Rogers & Whitehead, 497 F. Supp. at 453.

Here, the Iatarola Intervenors seek to intervene in a CFTC enforcement action. The Iatarola Intervenors have an interest in the action: they wish to recover the money stolen from them through the AJR Capital Scheme. The CFTC, however, adequately represents the Iatarola Intervenors' interest. The CFTC: (1) brought the action to recover the Iatarola Intervenors' and

6

other investors' funds; (2) obtained a restraining order freezing some of Defendants' assets; (3) obtained a judgment against Defendants, requiring them to pay over $4.5 million in restitution; and (4) is distributing to the Iatarola Intervenors and other investors the money recovered from Defendants. The Iatarola Intervenors' interest will not be impaired, even if the CFTC does not bring claims against the Additional Defendants. The Iatarola Intervenors can bring their own, private action against the Additional Defendants. Finally, permitting the Iatarola Intervenors to intervene would reopen the case, introduce new claims and parties, and impose additional costs and burdens on the CFTC. The Court sees no reason to divert the CFTC's resources to a case that has already been prosecuted successfully. Accordingly, the Court holds that the Iatarola Intervenors cannot intervene in the action as of right or permissively.

The Iatarola Intervenors appear to be asking the Court to permit the Panama Victims to intervene in the action in order to bring claims related to the Panama Fraud. The Court notes that the Iatarola Intervenors cannot bring a motion on behalf of the Panama Victims; to intervene in the action, Panama Victims would have to file their own motion. In any event, the Court cannot permit the Panama Victims to intervene. The Panama Victims did not invest in the AJR Capital Fraud, and thus do not have an interest in the case. Accordingly, they cannot intervene as of right pursuant to Rule 24(a). The Court will not grant permissive intervention. Reopening the case to allow the Panama Victims to bring new claims based on an entirely separate fraud will impose undue costs and burdens on the CFTC. If the Panama Victims wish to pursue claims related to the Panama Scheme, they may do so in a separate action.

III. <u>Conclusion</u>

For the reasons set forth above, the Court DENIES the Iatarola Intervenors' motion to reopen the case. The case will remain closed.

SO ORDERED.

DATED: New York, New York
January 11, 2010

_____
KIMBA M. WOOD
United States District Judge

8